# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HEATHER L. OAKES,                    )
                                     )
    *Plaintiff*                    )
                                     )    **Civ. No. 15-507**
    v.                             )
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social Security,   )
                                     )
    *Defendant*                    )
                                     )

## OPINION & ORDER

### I. Introduction.

This case is before the Court on appeal from a final decision by the Defendant, the Acting

Commissioner of Social Security ("the Commissioner"), denying the claim of Plaintiff Heather

L. Oakes ("Oakes") for supplemental security income ("SSI") under Title XVI of the Social

Security Act ("SSA"). Oakes filed her Complaint seeking judicial review pursuant to 42 U.S.C.

§ 405(g), [ECF No. 5], and the parties have submitted cross-motions for summary judgment with

briefs in support.[1] [ECF Nos. 13, 14, 16, 17]. Oakes also has filed a reply brief. [ECF No. 18].

The Commissioner's motion seeks affirmance and Oakes' motion seeks remand. For the

following reasons, I will deny the Commissioner's motion, grant Oakes' motion, vacate the

ALJ's decision that Oakes is not entitled to supplemental security income and remand for further

proceedings consistent with this Opinion.

### II. Procedural History.

---

[1] As observed by <u>Oberley v. Colvin</u>, 2014 WL 2457398 at *1 n.1 (W.D.Pa. May 30, 2014), although Federal Rule of Civil Procedure 56 does not govern the District Court's judicial review of the Commissioner's decision under the Act, cross-motions for summary judgment are employed by the parties to provide a method for consideration of their respective positions.

Heather L. Oakes applied for SSI on May 4, 2012 with an alleged onset date of July 15, 2006. Under 20 C.F.R. § 416.335, if eligible, SSI benefits would not be payable to Oakes for periods prior to the month following May 4, 2012. Oakes' claims were initially denied and she filed a timely request for a hearing, which was held before Administrative Law Judge ("ALJ") David J. Kozma on September 23, 2013. R. 35-59. Oakes was represented by counsel and testified at the hearing, as did an independent vocational expert ("VE"). By Decision dated November 8, 2013, the ALJ determined that Oakes was not disabled under the SSA, and therefore, was not entitled to SSI benefits under the SSA. R. 21-30.

Oakes timely filed for review by the Appeals Council of the ALJ's determination that she was not disabled under the Act. The Appeals Council denied review on February 13, 2015. R. 1. Thus, the ALJ's Decision became the Commissioner's final decision for purposes of this Court's review. Having exhausted her administrative remedies, Oakes filed the instant action seeking judicial review of the final decision of the Commissioner of Social Security denying her SSI application. With leave granted April 22, 2015, [ECF 3], Oakes proceeds *in forma pauperis*.

**III. Standard of Review.**

The Congress of the United States provides for judicial review of the Commissioner's denial of a claim for benefits. See 42 U.S.C. § 405(g)(2012). On review, the court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence has been defined as 'more than a mere scintilla,'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)), and "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305

U.S. 197, 229 (1938)). This standard also has been referred to as "less than a preponderance of evidence but more than a scintilla," Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002), and does not permit the reviewing court to substitute its own conclusions for that of the fact-finder. See id; Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). Nevertheless, "[a]n ALJ must explain the weight given to physician opinions and the degree to which a claimant's testimony is credited." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011). The ALJ's decision will not be reversed if supported by substantial evidence and decided according to correct legal standards. Id. To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. 5 U.S.C. § 706(1)(F).

**IV. Five Step Evaluation Process for Determining Disability under the SSA.**

Under the SSA, the term "disability" is defined as the:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. § 423. A person is unable to engage in substantial activity when she:

is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work....

42 U.S.C. § 423(d)(1)(A) & (d)(2)(A).

In determining whether a claimant is disabled under the SSA, a sequential evaluation process is applied. 20 C.F.R. § 416.920(a). See McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows. At step one, the

Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. 20 C.F.R. 20 C.F.R. § 416.920(b). At step two, the Commissioner must determine whether the claimant has a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(c). If the claimant has a severe impairment, the Commissioner must then determine at step three whether the impairment or combination of impairments meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, Subpart P, Appendix. 1. 20 C.F.R. § 416.920(d).

If a listing is not met, the Commissioner then must determine the claimant's residual functional capacity ("RFC"); that is, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e). At step four the Commissioner must determine whether the claimant's impairment or impairments prevent her from performing her past relevant work. 20 C.F.R. § 416.920(f). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering her residual functional capacity and age, education and work experience. 20 C.F.R. § 416.920(g). See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

## V. ALJ's Determination.

The ALJ determined that Oakes was not disabled under § 1614(a)(3)(A) of the Social Security Act since May 4, 2012, the date of her application. R. 30. Oakes has a high school education, R. 25, 40, and was 34 years old on the date she filed her application for SSI, R. 29, 40, 61, placing her in the age category of younger person under the regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). In his Decision, the ALJ concluded that Oakes had the following severe impairments: chronic low back pain with left lumbar radiculopathy, major depressive

disorder, recurrent, mild to moderate, anxiety, familial adenomatous polyposis ("FAP"),[2] and obesity[3] status post gastric bypass surgery. R. 23 (citing 20 C.F.R. § 416.920(c)). He further determined that Oakes had the following non-severe impairments: some complaints of headaches, for which Oakes takes over the counter medicine, obstructive sleep apnea treated with a CPAP mask, and hypertension controlled with medication. R. 23, 283, 377, 501, 549. The ALJ also found that Oakes' impairments singly or in combination did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. § 416.920(d), § 416.925 and § 416.926). R. 23-25. As to Oakes' RFC, the ALJ found that she has the RFC to perform unskilled light work with the restriction to an option to sit and stand at will and with further restriction to simple, routine, repetitive tasks, little judgment making, low stress work environment, no public contact and no intensive supervision. R. 25.

In ruling, the ALJ also made the following credibility determination:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 26.

Ultimately, the ALJ determined that Oakes "has not been under a disability, as defined in the Social Security Act, since May 4, 2012, the date the application was filed (20 CFR 416.920(g))." R. 30. Regarding his ultimate ruling that Oakes is not disabled under the Act, ALJ Kozma further stated:

---

[2] Familial Adenomatous Polyposis or "FAP" is a genetic disease in which "multiple adenomatous polyps line the mucous membrane in the intestine, particularly the colon," Dorland's Illustrated Medical Dictionary, p. 1493 (32nd Ed. 2012), and can cause bloody diarrhea. Id. FAP requires colectomy as a preventative treatment as the disease leads to numerous polyps that eventually become cancerous. Id., 2 J.E. Schmidt, Attorneys' Dictionary of Medicine, at F-22, 27 (Matthew Bender 2015 Reprint Ed.); R. 549.

[3] Obesity is no longer a listed impairment, but requires consideration of the additional and cumulative effects, if any, in determining Oakes' RFC. SSR 02-1p [Evaluation of Obesity]).

5

[b]ased on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of Medical-Vocational rule 202.21.

R. at 30.

## VI. Discussion.

Oakes seeks to have the agency decision vacated and the matter remanded for further administrative proceedings, arguing that the ALJ erred in determining that her mental impairment did not meet or medically equal listing 12.04, that the RFC as found by the ALJ was not supported by substantial evidence, that the ALJ's credibility determination was not supported by substantial evidence, and that the ALJ erred at Step 5 in relying on an incomplete hypothetical. [ECF 14 at 1].

### A. Whether the ALJ erred in determining that Oakes' mental impairment did not meet or equal Listing 12.04.

We turn to Oakes' argument that the ALJ erred regarding his failure at step three to find that her mental impairments met Listing 12.04. Regarding the listing, the ALJ specified:

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 or 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. . . .

In activities of daily living [paragraph B(1)], the claimant has mild restriction. The claimant reported in various statements in the record that she is independent with personal care. She lives independently with her three minor children (Exhibit 4E). Overall, I find mild limitation of functioning in this category.

In social functioning [paragraph B(2)], the claimant has moderate difficulties. The claimant testified that she is anxious and does not like to be around people and has issues with supervisors. . . .

With regard to concentration, persistence or pace [paragraph B(3)], the claimant has moderate difficulties. Dr. Kennedy found claimant only slightly limited in her ability to understand, remember and carry out short, simple instructions. The

6

claimant's overall ability to concentrate and perform tasks appears relatively intact. Her thought process is normal. Her emotional disorders reasonably may be expected to limit her in these areas, but not to the point that she cannot perform routine, repetitive tasks that require little judgment making. . . .

As for episodes of decompensation [paragraph B(4)], the claimant has experienced no episodes of decompensation, each of extended duration, none. The claimant's testimony and the medical record show that she has not required more than conservative medical management by her primary care physician for mental health problems and has not been hospitalized for an acute exacerbation of mental health problems (12.00C.4, Appendix 1).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

R. 24.

Oakes has the burden at step three of presenting sufficient evidence that her medical impairments are of listing severity. Williams v. Commissioner of Soc. Sec., 156 F. App'x. 501, 505 (3d Cir. 2005). "The burden imposed on claimant at step three is a far more exacting standard than step two's threshold (used to prevent frivolous claims), which requires that a clamant [merely] show that she suffers from a 'severe' impairment." Williams, 156 F. App'x. at 505. Moreover, as pointed out by the ALJ, step three differs from the more detailed RFC finding that is required after step three. SSR 96-8p (RFC and Sequential Evaluation); R. 25.

The requirements of Listing 12.04, addressing "affective disorders," 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.04(A), are set out in the regulations. According to Listing 12.04, affective disorders are "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.04. The

required level of severity under the listing is met when the requirements in both paragraph A and B are satisfied, or when the requirements of paragraph C are satisfied. 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.04. Paragraph B of the listing requires two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.04(B). "A marked limitation is one that seriously interferes with a claimant's ability to 'function independently, appropriately, effectively, and on a sustained basis.'" Morris v. Barnhart, 78 F. App'x. 820 (3d Cir. 2003)(quoting 20 CFR pt. 404, subpt. P, app. 1 § 12.00(C) (1999)).

The ALJ found that Oakes had major depressive disorder, satisfying part A, but found that paragraphs B and C of the listing were not satisfied, providing a detailed explanation of his reasoning. R. 24. Oakes challenges the ALJ's finding that she did not meet the listing as to paragraph B as not supported by substantial evidence and specifically challenges his findings that she suffered from only 1) mild as opposed to marked restriction of activities of daily living, 2) moderate as opposed to marked difficulties in maintaining social functioning, and 3) moderate as opposed to marked difficulties in maintaining concentration, persistence or pace. Oakes directs her challenge to subparagraphs 1, 2 and 3 of paragraph B, arguing that the ALJ failed to adequately explain his decision regarding the listing; that although ALJ described that Oakes did not like to be around people and had issues with supervisors, his finding that she had only moderate difficulties in social functioning as opposed to the marked limitation found by Dr. Kennedy was error; and thus, the ALJ's findings as to Paragraph B (1) to (3) are not supported by substantial evidence. [ECF 14 at 9-10]. In support she asserts: "[t]he marked and extreme limitations opined by treating physician Dr. Venditti, as well as those identified by consultative

8

psychologist Dr. Charles Kennedy, Ph.D., regarding Plaintiff's social functioning and concentration, persistence, and pace satisfy the 'paragraph B.' requirement." [ECF 14 at 9].

I first address the ALJ's finding with respect to Dr. Lindsay Venditti, M.D. and Exhibit 4F which is a document dated May 15, 2012 entitled "Mental Capacity Assessment" ("assessment") and signed by Dr. Venditti. R. 275-277. Oakes specifically contends that Exhibit 4F constitutes an opinion of a treating physician entitled to significant or controlling weight. [ECF 14 at 13]. With respect to the assessment, the ALJ specified: "I am aware of the medical report at Exhibit 4F that indicates significant mental health issues; however, this assessment is not signed by a mental health professional and thus, is not assigned any weight." R. 27. Plaintiff argues that the ALJ erred because Exhibit 4F was signed by Dr. Venditti. [ECF 14 at 11 & n. 4]. In response to Oakes' argument, the Commissioner contends that the ALJ properly gave no weight to the opinion in Exhibit 4F because he indicated that the form was actually a self-assessment by Oakes, and not the opinion of Dr. Venditti. [ECF 17 at 14-15].

Both Oakes and the Commissioner misconstrue the ALJ's ruling. The ALJ did not indicate that the form was unsigned, as Oakes argues. R. 27. Nor did the ALJ indicate he gave no weight to the opinion in Exhibit 4F for the reason that it was not an opinion and instead was a self-assessment, as asserted by the Commissioner. It is clear, however, from the very face of the assessment characterized by Oakes as a treating physician's opinion that Dr. Venditti herself expressly disavowed its use as her opinion. Where asked on the form to "[d]escribe the medical/clinical findings that support this assessment," Dr. Venditti indicated "Pt did the above as a self assessment." R. 277. Thus, I find that the assessment provided in Exhibit 4F does not constitute opinion evidence of Oakes' treating physician. I will not assign as reversible error the

9

failure of the ALJ to credit the opinion of a treating physician that simply does not exist—Exhibit 4F is expressly disclaimed as a physician's opinion by Oakes' treating physician.[4]

The ALJ found that Oakes had mild restriction in activities of daily living based on Oakes' own report that she is independent with personal care, that she lives independently with her three minor children and is responsible for their care, cooks, cleans and shops. R. 24, 25; [Ex. 4 E (Function Report)]—R. 177 (personal care); R. 175, 177 (lives independent with children); R. 178 (cooks daily for kids for 30 minutes to an hour depending on the food being cooked); R. 178 (helps with laundry and does dishes); R. 179 (goes to store, doctors' appointments or out for care of kids three times a week and does yard work sitting). Based on review of the record as a whole, and there being no error on the part of the ALJ concerning the treatment of Ex. 4F, I find the ALJ's Paragraph B(1) finding is supported by substantial evidence.

I now turn to Oakes' challenge to the ALJ's findings under Paragraph B (2) and (3) of the listing as it relates to the opinion of the consultative examining psychologist, Dr. Kennedy, Ph.D. Oakes asserts as to social functioning and concentration, persistence and pace, that Dr. Kennedy "found marked limitation in her ability to interact appropriately with the general public, supervisors, and coworkers. Kennedy opined that Plaintiff had marked limitations in her ability to respond appropriately to pressure in the work setting and marked limitations in ability to respond to changes in the work setting." [ECF 14 at 9 (internal citations omitted)].

The ALJ acknowledged that the psychologist stated that he assessed certain marked limitations, but afforded the opinion only some weight, explaining:

---

[4] Had Dr. Venditti not disavowed the form and not specified that it was a self-assessment, as it appears to be a "check the box form," it likely would have constituted weak evidence "at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best").

10

[a]lthough Dr. Kennedy assessed 'marked' limitation in various areas of mental health functioning, this is inconsistent with Dr. Kennedy's findings of mental status examination. I note that he assigned a Global Assessment of Functioning (GAF)[5] score of 55, which denotes only a moderate impairment in social or occupational functioning.

R. 27 (internal citation omitted). The ALJ further based his finding of less than marked limitations on his consideration of the medical evidence, including that Dr. Kennedy found on his July 26, 2012 exam that Oakes was fully oriented, R. 350-351, her thought process was in order, and her memory and concentration were intact, R. 350, and that Oakes' treating and examining doctors had observed her as alert, not in distress, able to adequately recall events, dates, and names, able to respond appropriately to questions, her though processes remained in order and she was able to attend her appointments regularly and for the most part adequately was able to relate to people. R. 27-28, 350, 389.

Specifically, Dr. Kennedy's medical source statement, which provides the GAF assessment of 55, R. 351, details his observations, including that Oakes "arrived to the appointment unaccompanied and drove to the office. She arrived about 10 minutes early. . . . She was cooperative and compliant. . . . She was well-mannered and displayed fair self-sufficiency." R. 347-348. Dr. Kennedy further stated in his report that Oakes

maintained good eye contact. She did not display anxiety or depression in today's evaluation. . . She seemed to put forth good effort in attempts to answer the questions and was able to sustain attention throughout the entire process. . . . Her affect was appropriate with a limited range of expression. Her emotional expression was appropriate to thought content and to the situation.

---

[5] The Global Assessment of Functioning or "GAF" scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by a clinician to indicate an individual's overall level of functioning in light of psychological, social, and occupational limitations. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual (4th ed. Text Revision 2000), at p. 34. A GAF score in the range of 51 to 60 connotes moderate symptoms or moderate difficulty in social, occupational, or school functioning. Id. Although the GAF has been eliminated in the Fifth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual, as indicated in the Social Security Administration's July 13, 2013 Administrative Message issued as a result of the change in the Fifth Edition, SSA AM-13066 (July 13, 2013), the GAF scale is still used as medical opinion evidence by the Social Security Administration

R. 349. Dr. Kennedy also observed that Oakes "is . . . able to comply with public customs and expectations." R. 351.

The ALJ thus gave only "some weight" to Dr. Kennedy's statement of marked limitations based on the internal inconsistencies in Dr. Kennedy's own assessment of Oakes when comparing Dr. Kennedy's indication of severity in the check list portion of the form with his accompanying mental status exam report, which includes the GAF assessment and detailed findings, and the inconsistencies the ALJ found when considering the treatment records, including that Oakes' treatment record revealed only conservative medical management by her primary care physician for her mental health issues. R. 24, 27-28.

Contrary to Oakes' argument, I find that the ALJ adequately explained his reasoning for giving only some weight to the opinion of the consulting examining psychologist, and review of the record as a whole indicates that the ALJ's findings are adequately supported in this regard. Bartlett v. Colvin, 2014 WL 1646925, at *3 (W.D. Pa. April 24, 2014) (not error to give little weight to consultative physician's opinion given internal inconsistencies and inconsistencies with medical evidence and to give little weight to treating medical source statement that conflicted with treatment notes); see also O'Connor v. Comm'r of Soc. Sec., 477 F. App'x 96, 100 (3d Cir. 2012) (ALJ may even reject a treating physician's opinion as inconsistent with the treating physician's own records or other opinions and medical evidence); accord Ridenbaugh v. Barnhart, 57 F. App'x. 101, 105 (3d Cir. 2003) (inconsistency in treating physician's opinion as compared to treating physician's own findings and other medical evidence). Accordingly, the ALJ's finding that Oakes did not meet Listing 12.04 is supported by substantial evidence, and therefore, I reject Oakes' challenge to it.

**B. Whether the ALJ's RFC determination is supported by substantial evidence.**

12

Regarding Oakes' RFC, the ALJ specifically determined:

> [a]fter careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled, light work that allows the claimant the option to sit and stand, at will. In addition, claimant is restricted to simple, routine, repetitive tasks performed in a low stress work environment with no public contact, little judgment making, and no intensive supervision (20 CFR 416.967).

R. 25.

In reviewing an ALJ's RFC determination, the Third Circuit in Fargnoli v. Massanari, 247 F.3d 34 (3d Cir. 2001), has explained:

> The ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four. See 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; Burnett, 220 F.3d at 121. That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. See 20 C.F.R. § 404.1545(a). Moreover, the ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). In Cotter, we explained that [i]n our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. Id. at 705 (quoting Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir.1974)).

Fargnoli, 247 F.3d at 41. Simply put, the ALJ's reasons for his findings must build "an accurate and logical bridge between the evidence and the result." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996); Gamret v. Colvin, 994 F.Supp.2d 695, 698 (W.D. Pa. 2014).

## 1. Challenge regarding treating physicians' opinions

Oakes reasserts the challenge to the supposed opinion of Dr. Venditti, [ECF 14 at 11], which I need not further address because as discussed *supra* the document was not an opinion by Dr. Venditti at all, but rather a self-assessment by Oakes. Oakes also contends that the ALJ erred

13

in not giving controlling weight to the December 2012 and September 2013 opinions of Dr. Wendy Palastro, M.D., Oakes' treating family medicine resident physician at UPMC St. Margaret Family Health Center (a/k/a New Kensington Family Health Center). [ECF 14 at 14].

Great or controlling weight is given a treating physician's opinion where the opinion is based on ongoing observation over a prolonged period of time, unless contradicted by the medical record. Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008). Check the box or fill in the blank forms, however, regardless if completed by a treating physician, are not entitled to controlling weight. Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cri. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best" and the reliability of such reports not accompanied by a thorough written report is considered suspect.) (citing Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir.1986); Green v. Schweiker, 749 F.2d 1066, 1071, n. 3 (3d Cir. 1984)). Even where an opinion is not expressed as a check the box form and is that of a long-standing treating physician, conflicts with the opining physicians' own treatment notes or other portions of the medical record are appropriate bases in declining to give controlling or great weight to an opinion. O'Connor, 477 F. App'x at 100; Ridenbaugh, 57 F. App'x. at 105.

The ALJ declined to give "controlling weight" to the opinions of Dr. Palastro provided in the check the box form reports completed in December 2012 and September 2013. R. 26, 366, 544. At the time Dr. Palastro completed the forms she had not treated Oakes over a prolonged period of time as she indicated on the December 2012 form that she began treating Oakes in August of 2012. R. 368. Further, the ALJ explained that Dr. Palastro's check the box reports indicated an exertional capacity "below the sedentary level" R. 26, that conflicted with Dr. Palastro's own laboratory reports, findings on examination, subsequent October 2013 letter

14

assessment, discussed *supra*, as well as the claimant's activities of daily living. Id. The ALJ further indicated that although the records and objective medical evidence would support a reduction in exertional capacity, the medical record and Oakes' activities of daily living were consistent with and supported an exertional capacity allowing for light work with limitations. R. 26. Thus, the ALJ determined that Oakes could perform work with restriction to positions that permitted a sit/stand at will option. The ALJ further observed that the physical examinations produced essentially unremarkable findings. R. 26; R. 485, 486 (chronic low back pain with radiculopathy aggravated by sitting, no subjective weakness, and no clear trigger).

By letter dated October 18, 2013, Dr. Palastro indicated that regarding Oakes' hypertension and obstructive sleep apnea, that they were controlled, regarding her FAP, that it was to be treated with a colectomy once Oakes weighed 150 lbs. or less, regarding her low back pain with left lumbar radiculopathy, that it caused difficulty with walking and sitting for prolonged periods of time and in doing manual labor, and regarding Oakes' depression and anxiety, that Oakes did not want to interact with people and was not a great "people person." R. 549. As such, the impairments as indicated in Dr. Palastro's October 18, 2013 assessment, R. 549, and observed by the ALJ, would not prevent Oakes from working and were addressed adequately in the ALJ's RFC finding, as discussed *infra*. Therefore, I find no error in the ALJ's decision not to give controlling weight to the December 2012 and September 2013 form questionnaires. Mason v. Shalala, 994 F.2d at 1065; Brewster v. Heckler, 786 F.2d at 585; Green v. Schweiker, 749 F.2d at 1071, n. 3.

## 2. Challenge regarding non-examining consultants Drs. Mari-Mayans and Vizza

Oakes also asserts that remand is required because Dr. Juan B. Mari-Mayans, M.D. and Dr. James Vizza, Psy.D., state agency non-examining consultants, did not have the benefit of Dr.

15

Palastro's December 2012 and September 2013 opinions regarding Oakes' physical impairments, rendering the record incomplete. [ECF 14 at 16]. Oakes further asserts that opinions of state agency review physicians provide weak evidence with suspect reliability, citing Claussen v. Chater, 950 F. Supp. 1287, 1296 n. 10 (D. N.J. 1996). [ECF 14 at 17]. Claussen does not support this proposition. Instead, Claussen cites Mason for the proposition that check the box forms, such as the December 2012 and September 2013 forms on which Oakes relies, are weak evidence and where unaccompanied by thorough written reports are of suspect reliability.

Contrary to Oakes' assertion, "state agent opinions merit significant consideration as well." Chandler, 667 F.3d at 361. Furthermore, the regulations do not prohibit the ALJ from relying on state agency opinions issued prior to subsequently generated medical records as "there is always some time lapse between the consultant's report and the ALJ hearing and decision. Only where additional medical evidence is received that *in the opinion of the* [ALJ] . . . may change the State agency medical consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing, is an update to the report required." Chandler, 667 F.3d at 361 (citing SSR 96-6 (July 2, 1996)(emphasis in original)). Accordingly, where, as here, Drs. Mari-Mayans and Vizza did not review the form checklist reports of Dr. Palastro in formulating their opinions, it is not reversible error and the record is not incomplete, particularly in light of the fact that the ALJ here did not rubberstamp either state agency consultant's opinions, Chandler, 667 F.3d at 362, giving their opinions only "some weight." R. 26, 27.

### 3. Physical RFC Issues

Oakes also argues that the ALJ failed to address certain of her symptoms and complaints. [ECF 14 at 9]. On review, I find that the ALJ fails to address certain of Oakes' salient physical symptoms, resulting in missing portions of the bridge between the evidence and the result.

16

Sarchet, 78 F.3d at 307; Gamret, 994 F.Supp.2d at 698. Thus, remand is required. Oakes

testified and elsewhere indicated that she experienced problems with uncontrollable bleeding,

both vaginal and rectal, bowel issues, and fatigue related to her FAP. R. 44-47, 53, 175-177. 184,

185. There are numerous references in the medical record from Oakes' treating physicians,

including endoscopy and colonoscopy procedure records, noting her problems with bleeding,

including rectal bleeding and heavy vaginal bleeding. R. 175-176301, 306, 307, 332, 334, 337,

356, 375, 376, 382, 388, 389, 408, 438, 484; R. 334, 337, 356, 438, 484. Dr. Palastro noted that

Oakes would need additional breaks from work when she was bleeding. R. 368, 544.

Where an ALJ fails to make mention of significant findings, the reviewing court cannot

determine whether he considered and rejected them, considered and discounted them, or failed to

consider them at all. Fargnoli, 247 F.3d at 40 n.5. Thus, the ALJ must give indication of the

evidence he rejects and explain the reasons for discounting pertinent evidence. Fargnoli, 247

F.3d at 43. As stated in Fargnoli:

> [a]lthough we do not expect the ALJ to make reference to every relevant
> treatment note in a case where the claimant . . . has voluminous medical records,
> we do expect the ALJ, as the factfinder, to consider and evaluate the medical
> evidence in the record consistent with his responsibilities under the regulations
> and case law. His failure to do so here leaves us little choice but to remand for a
> more comprehensive analysis of the evidence consistent with the requirements of
> applicable regulations and the law of this Circuit.

Id. at 42.

Discussion by the ALJ regarding Oakes' difficulty with bleeding and how that would

affect her ability to work is non-existent. Without discussion of her bleeding issues and how that

relates to her work ability, I cannot tell on review what evidence the ALJ considered and

rejected, considered and discounted or considered at all regarding these symptoms. Id. at 40 n.5.

Similarly, although he does recite that Oakes indicated "she is in the bathroom 85% of the day,"

and he did not find her fully credible, the ALJ did not address whether and to what extent Oakes' impairments would require the need for any additional bathroom breaks. As a result, remand is necessary for consideration of Oakes' symptoms regarding bleeding and bowel problems, the need for bathroom breaks and/or other bathroom accommodations.

As to Oakes' chronic low back pain with left lumbar radiculopathy, the ALJ observed that Oakes recently had gastric bypass for her obesity, had lost significant weight, and on exam in September 2013 by Dr. Palastro after having gastric bypass had reported no pain. R. 494. Dr. Palastro also had indicated in her October 2013 opinion that Oakes' obesity would not interfere with her ability to work. R. 26. The medical records on exam reflected no subjective weakness and no trigger with the low back pain, but that the radiculopathy was aggravated by sitting, R. 485, and that Oakes was counseled regarding exercise and nutrition. R. 486. The ALJ addressed the October 2013 assessment from Dr. Palastro indicating that Oakes' low back pain with left lumbar radiculopathy "leads to difficulty in walking, sitting for prolonged periods of time or doing manual labor." R. 549. The RFC accounted for the back pain and radiculopathy with the requirement that Oakes be given a sit/stand at will option. As a result, the ALJ's RFC finding restricting Oakes to a sit/stand at will option adequately addresses her credited reports of pain and her radiculopathy as a result of her obesity and is supported by substantial evidence.

The ALJ determined in his RFC finding that Oakes was able to perform light work with certain restrictions but without any restriction related to the ability to lift. The SSA specifically defines light work in relevant part as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Oakes challenges the ALJ's finding that she could perform work that requires lifting 20 lbs. inherent in his finding she could perform light work without lifting restrictions. [ECF 14 at 20].

18

Oakes indicated that her feet and hands go numb causing her to drop things, R. 177, and that she cannot lift more than 5 lbs. R. 181, 50. Both the December 2012 and September 2013 physical residual functional capacity forms completed by Dr. Palastro would appear to restrict Oakes' lifting capabilities to below 20 lbs., with the September 2013 form indicating that she could not lift 20 lbs. and frequently could lift only 10 lbs. and the December 2012 form indicated she could lift no weight. R. 369, 545. The state agency non-examining consultant, Dr. Mari-Mayans, however, indicated in his physical residual functional capacity assessment that Oakes "occasionally" could lift and carry 50 lbs. for a cumulative amount of 1/3 of an 8 hour day and "frequently" could lift and carry 25 lbs. for a cumulative amount of 2/3 of an 8 hour day. R. 68.

As with Oakes' bathroom issues, the ALJ does appear to acknowledge at one point that Oakes indicates an issue with ability to lift, R. 25, but he does not otherwise discuss the record as to her inability to lift certain weight in arriving at the conclusion that she can perform work at the light level of exertion. Without discussion of the evidence as to lifting, I am unable to conclude that the ALJ's determination that Oakes can perform light work, which requires lifting of 20 pounds, is supported by substantial evidence as it is difficult to discern what evidence the ALJ considered and rejected or considered at all regarding Oakes' ability to lift, resulting in another portion of the bridge from the record to his determination missing. Oakes' abilities in this regard merit further consideration by the ALJ on remand.

#### 4. Mental RFC Issues

Regarding Oakes' mental RFC, the ALJ restricted her to simple, routine, repetitive tasks, a low stress environment, no public contact, little judgment making, and no intensive supervision. R. 25. By limiting Oakes to no public contact and no intensive supervision, the ALJ's RFC addresses the medical record, including the October 2013 evaluation by Dr. Palastro,

which provides that Oakes has difficulty interacting with people and was not a great people person. R. 549. The ALJ also cites Oakes' activities of daily living and her conservative treatment regime as a basis for his determination that her mental impairments do not prevent her from working jobs with the restrictions as he found. Although the ALJ appropriately considered the October 2013 assessment by Dr. Palastro as well as the observations made by Dr. Kennedy, the long term conservative medical treatment of Oakes' depression and anxiety, and her activities of daily living in arriving at his mental RFC, he fails to address anywhere Oakes' issues with mood swings. Oakes' issues with mood swings are noted in multiple places in the record, R. 159, 175, 176, 185, 348, 351, therefore meriting discussion by the ALJ. Accordingly, on remand the ALJ shall include discussion of the evidence regarding Oakes' problems with mood to permit meaningful review of his determination and consideration of the evidence regarding same.

In sum, as the ALJ failed to address certain of Oakes' symptoms, his RFC is not supported by substantial evidence.

### C. The ALJ's Determination as to Oakes' Credibility

The ALJ found that Oakes was not fully credible. R. 27, 28. Oakes argues that the ALJ's credibility analysis is incomplete and thus not supported by substantial evidence. [ECF 14 at 18]. As we have indicated that remand is required, we briefly address Oakes' challenge to the ALJ's credibility determination.

"An ALJ must explain the degree to which a claimant's testimony is credited." Chandler, 667 F.3d at 362. "Although any statements of the individual concerning his or her symptoms must be carefully considered, SSR 96-7pm (July 2, 1996), the ALJ is not required to credit them." Id. at 363 (citing 20 C.F.R. §404.1529(a)). "In concluding that some or all of a claimant's testimony is not credible, the ALJ may rely on discrepant medical evidence and the

claimant's inconsistent statements." Jones v. Astrue, 2012 WL 3279256 at * 2 (E.D. Pa. 2012).

The "[i]nconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude

that some or all of the claimant's testimony about [her] limitations or symptoms is less than fully

credible." Weber v. Colvin, 2016 WL 3922648, at *6 (W.D. Pa. July 20, 2016) (citing Burns,

312 F.3d at 129–30); see also Seaman v. Social Security Administration, 321 F. App'x. 134,

135-136 (3d Cir. 2009) (upholding determination based on comparison with medical evidence

and self-report of activities of daily living). A claimant's course of treatment is an appropriate

basis on which to assess credibility as well. Weber, 2016 WL 3922648, at *6. See also Hartranft

v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (allegations not fully credible where inconsistent with

medical evidence, description of daily activities and rehabilitation and medical regimen).

The ALJ found Oakes' allegations as to her limitations and pain not fully credible

considering the medical record, the conservative treatment regimen, and her daily activities. R.

24, 27, 28. Oakes' report of daily activities indicated that she lived in a two story house with her

three minor children for whom she was responsible, she shops, drives, including driving herself

to appointments and arriving promptly or ahead of schedule, cooks quick meals for up to an

hour, and goes up and down the stairs multiple times in the morning. R. 43-45. The ALJ noted

that Oakes had lost a significant amount of weight after her gastric by-pass in August of 2013, R.

27, and that in September 2013, Oakes reported no physical pain on examination. R. 27. Indeed,

there are numerous occasions throughout the medical record that indicate that despite Oakes'

radiculopathy as a result of obesity she experienced no pain on exam. R. 287, 295, 302, 304, 379,

386, 388-389, 412. Furthermore, Oakes' treating physicians encouraged her to exercise, R. 383,

384, 385, 390, 486, and she planned to continue to walk and do arm and leg lifts. R. 381. While

the ALJ's detailed legitimate considerations in assessing Oakes' credibility, as I have found that

21

remand is required for the ALJ to consider evidence as to certain of Oakes' conditions, the ALJ likewise must reconsider his finding on credibility on remand. Mason v. Shalala, 994 F.2d 1056, 1068 (3d Cir. 1993); Weber v. Colvin, 2016 WL 3922648 at *6 (W.D. Pa. 2016); Abdulla v. Colvin, 2014 WL 509173 at *5 (W.D. Pa. 2014).

### D. Whether the ALJ erred in relying on the hypothetical posed to the VE.

"A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). For the most part, Oakes' argument regarding the hypothetical posed to the VE rests on her challenge to the RFC as found by the ALJ. For example, she challenges that the hypothetical relied on did not include restrictions related to the need for unscheduled bathroom breaks and absenteeism due in part to bleeding and bathroom issues and that it did not address any lifting restrictions. [ECF 14 at 20, 22]. As I have determined that remand is required regarding the RFC, I do not readdress these arguments in the context of the hypothetical other than to direct that on remand any hypothetical relied on by the ALJ as substantial evidence also must accurately reflect all of the claimant's mental and physical impairments that are supported by the medical record, Burns, 312 F.3d at 123; Chrupcala, 829 F.2d at 1276, as determined on remand.

For completeness, I address one additional matter regarding the hypothetical posed to the VE. Oakes makes an argument that although the ALJ found that Oakes had moderate limitations in concentration, persistence and pace, the hypothetical did not account for these limitations, and thus, remand is required on this basis as well. [ECF 14 at 21]. The hypothetical relied on by the ALJ considered "a low-stress type of job that's unskilled in nature. Nor around the public, little

judgment making, routine repetitive tasks, non-intensive supervision . . . in a light category with a sit-stand option at the choice of the employee." R. 56.

The Court of Appeals for the Third Circuit has observed that a hypothetical that includes a limitation to "simple, routine, repetitive work" or "simple, routine tasks" accounts for moderate deficiencies in concentration, persistence and pace. Burns, 312 F.3d 113, 123 (3d Cir. 2002); Najmi-Nejad v. Barnhart, 75 F. App'x 60, 64 (3d Cir. 2003); McDonald v. Astrue, 293 F. App'x. 941, 946-947 (3d Cir. 2008). Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968. Although the ALJ did not use the term "simple" in the hypothetical, he did specify unskilled work, which as defined requires simple duties or tasks. Thus, the limitation on concentration, persistence and pace was adequately included in the hypothetical and this challenge is rejected.

## VII. Conclusion

For the foregoing reasons and based upon review of the record as a whole, the decision of the Commissioner that Oakes was not disabled is not supported by substantial evidence. Accordingly, pursuant to 42 U.S.C. § 405(g), this case will be remanded to the Commissioner for reconsideration. An appropriate order will be entered denying the Commissioner's motion for summary judgment, granting Ms. Oakes' motion for summary judgment, vacating the decision of the Commissioner and remanding for further proceedings consistent with this Opinion.

September __1__, 2016

Donetta W. Ambrose
Senior United States District Court Judge

23

## ORDER

AND NOW, this 1st day of September, 2016, the motion of Defendant [ECF 16] is DENIED, the motion of Plaintiff [ECF 13] is GRANTED, the decision of the Commissioner is vacated, and this matter is remanded for further proceedings consistent with this opinion.

By the Court:

Donetta W. Ambrose
Senior United States District Court Judge